# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MARY ELIZABETH GAMEZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **4:12-cv-2522-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Mary Elizabeth Gamez ("Gamez") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Gamez filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on January 13, 2009, alleging a disability onset date of March 6, 2008, due to limitations caused by a right leg injury. (R. 38, 208).  After the SSA denied Gamez's claim, she requested a hearing before an ALJ. (R. 124-25). The

ALJ subsequently denied Gamez's claim, (R. 35-45), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Gamez then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the

2

Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.*  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand*

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.* See 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

### IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Gamez had not engaged in substantial gainful activity since March 6, 2008, and, therefore, met Step One. (R.

5

40).  Next, the ALJ found that Gamez satisfied Step Two because she suffered from the severe impairments of "status-post surgery of the right lower extremity with pain, and obesity."  *Id*.  The ALJ then proceeded to the next step and found that Gamez failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id.*  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Gamez

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she could perform simple not complex tasks, maintain attention and concentration for 2 hours in an 8 hour workday, with all customary provided breaks, contact with supervisors and others should be casual and nonconfrontational, changes in the work setting should be gradual, slowly introduced and well-explained, occasionally lift and/or carry 10 pounds and 5 pounds frequently, sit for 6 hours total (or more) out of an 8 hour workday, stand and/or walk for a total of 2 hours in an 8 hour workday, no concentrated exposure to extreme cold, heat, wet, vibration, no unprotected heights, no dangerous or moving equipment, occasional balancing, stooping, crawling, climbing of ramps and stairs.

(R. 40-41).  In light of her RFC, the ALJ held that Gamez "is unable to perform any past relevant work."[2]  (R. 43).  Lastly, in Step Five, the ALJ considered Gamez's age, education, work experience, and RFC and determined "there are jobs that exist in significant numbers in the national economy [Gamez] can perform."  (R. 44).   Therefore,

---

   [2]  As of the date of the ALJ's decision, Gamez was 28 years old, had a limited education, and past relevant unskilled work as an assisted living center floor aid, which ranged from medium to heavy exertional level.  (R. 43-44).

the ALJ found that Gamez "has not been under a disability, as defined in the Social Security Act, from March 6, 2008, through the date of this decision." (R. 45).

## V.  Analysis

The court now turns to Gamez's contentions that the ALJ erred (1) because Gamez's RFC as assessed by the ALJ would not allow her to complete an eight-hour workday; (2) by improperly discounting the examination and vocational analysis performed by John McKinney; and (3) by failing to properly consider Gamez's pain. *See* doc. 8 at 11. The court addresses each contention in turn.

### A. The ALJ's RFC assessment

Gamez contends the ALJ's RFC assessment would prevent her from completing an eight-hour workday. Doc. 8 at 7. This contention is based on the literal wording of the ALJ's formal RFC finding, which provides Gamez has the capacity to "maintain attention and concentration for 2 hours in an 8 hour workday, with all customary provided breaks." (R. 40). Gamez argues the ALJ's RFC assessment limits her to "only two hours of concentration in an eight hour day." Doc. 8 at 7. Although the language used by the ALJ is ambiguous at best, or perhaps the result of a clerical error, there is no error here because the ALJ's intended meaning can be discerned from other portions of his decision and the record. In that regard, the court notes that the ALJ discussed Gamez's RFC when he explained the rationale for finding that Gamez would be able to perform other work:

> [T]he claimant's ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by *additional limitations*.  To determine the extent to which *these limitations* erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and *residual functional capacity*.

(R. 44) (emphasis added).  In other words, the ALJ has indicated unequivocally that his RFC finding contains restrictions identical to those contained in the hypothetical question posed to the VE.  Indeed, the ALJ's hypothetical question to the VE assumed an individual who "could maintain attention and concentration for two hours *at a time and complete an eight hour day* provided all customary breaks were given." (R. 101-02) (emphasis added).  Put simply, when considered together, the ALJ's decision and the hypothetical question posed to the VE specifically identify the nature and extent of the limitation in Gamez's ability to maintain attention and concentration during an eight-hour workday.  *See Powers v. Comm'r of Soc. Sec.* 195 F. App'x. 407, 412-413 (6th Cir. 2006) (unpublished) (omissions in an ALJ's formal findings do not constitute reversible error if intended meaning may be discerned from text of decision and the VE's testimony).  Therefore, because the record is clear that the ALJ found that Gamez can concentrate two hours *at a time*, instead of two hours total, in an eight-hour workday, any ambiguity in the ALJ's formal RFC finding does not constitute reversible error.  Alternatively, the alleged error is harmless because a remand to allow the ALJ to incorporate the restrictions contained in the hypothetical question into his RFC finding would not change the ALJ's ultimate finding.  *See Caldwell v. Barnhart*, 261 F. App'x

188, 190 (11th Cir. 2008) (unpublished) ("When . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." ) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983).

  B. <u>The examination and vocational analysis performed by John McKinney</u>

  Gamez next contends that the ALJ did not properly consider or assign weight to the examination and vocational analysis performed by John McKinney, a licensed professional counselor. Doc. 9 at 9-12. Mr. McKinney conducted a vocational assessment on December 22, 2008, to determine Gamez's "future employability and any potential wage loss she may incur," (R. 345), and rendered the following opinion on that issue:

> When her residual physical limitations and reports of pain are taken into consideration with her poor academic/intellectual functioning, extended absence from the labor market, obvious appearance of having a severe physical disability, lack of a high school diploma/GED, and other negative employability factors, there does not appear to be a reasonable expectation at the present time that Ms. Gamez could return to the competitive labor market. Therefore, she is considered to be 100% vocationally disabled.

(R. 348). Mr. McKinney also stated that Gamez had swelling and discoloration in her right lower extremity that "results in bursting of the graft sites and oozing of fluid." (R. 347).

  Because Mr. McKinney is not an acceptable medical source, s*ee* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources), his opinions are not medical source opinions. 20 C.F.R. § 404.1527(a)(2). Nonetheless, evidence from non-acceptable

sources may be used to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d); SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A.) (explains that because "there is a requirement to consider all relevant evidence in an individual's case record," it is the policy of the SSA that the "case record should reflect the consideration of opinions from . . . 'non-medical sources' who have seen the claimant in their professional capacity"). However, because "there is a distinction between what an adjudicator must consider and what the adjudicator must explain," the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See* SSR 06-03p at *6.

The record here shows that the ALJ considered Mr. McKinney's opinions. In a nutshell, the ALJ summarized Mr. McKinney's report in discussing the evidence, and quoted Mr. McKinney's opinion that Gamez "is considered to be 100% vocationally disabled." (R. 42, 348). Although the ALJ did not explicitly explain the weight he gave to Mr. McKinney's opinions, his conclusion that the RFC assessment "is supported by the opinions of Drs. Leberte and Tenchavez," (R. 43), is sufficient to show that he rejected Mr. McKinney's opinions because they were contrary to the opinions of treating and examining physicians. As the evidence shows, Dr. Mark Leberte, one of Gamez's treating physicians, opined on January 16, 2008, that while "it may be difficult for [Gamez] to do any prolonged standing or walking," her condition "will not preclude her

from doing any type of sit-down type duty or jobs where only minor standing and walking are involved," (R. 338), and Dr. Alvin Tenchavez, the SSA consultative examiner, found "no skin changes suggestive of varicosities, ulcers, or swelling" in the lower extremities when he examined her on March 26, 2009. These opinions directly contradict Mr. McKinney's findings, and provide substantial evidence to support the ALJ's implicit rejection of Mr. McKinney's report. Significantly, the ALJ complied with the policy expressed in SSR 06-3p because his reason for rejecting Mr. McKinney's report can be discerned from his decision. Therefore, Gamez's contention that the ALJ failed to properly consider Mr. McKinney's opinion is without merit.

    C.    <u>The ALJ's consideration of Gamez's pain</u>

Finally, Gamez contends the ALJ "failed to consider the pain standard in the disability determination," and "does not indicate he even considered the impact of the Plaintiff's residual pain." Doc. 8 at 11. Contrary to Gamez's contention, the ALJ properly addressed the pain standard:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects

of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(R. 41). Moreover, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* Finally, the ALJ explained why he only found Gamez's statements partially credible:

> In sum, the above residual functional capacity assessment is supported by the opinions of Drs. Leberte and Tenchavez, along with the other medical evidence in file, and is given significant weight, as the objective evidence supports a limited sedentary residual functional capacity. Therefore, the claimant's statements regarding the severity of her condition are considered partially credible.

(R. 43). In light of Dr. Leberte's opinion that Gamez's condition "will not preclude her from doing any type of sit-down type duty or jobs where only minor standing and walking are involved," and Dr. Tenchavez's findings of "no skin changes suggestive of varicosities, ulcers, or swelling," the court finds that the record supports the ALJ's decision not to fully credit Gamez's allegations of disabling symptoms. Where, as here, the ALJ articulated specific reasons, which are supported by substantial evidence, for discounting Gamez's testimony of disabling symptoms, and because this court does not reweigh the evidence, the court finds no reversible error in the ALJ's credibility finding.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Gamez is not disabled is supported by substantial evidence, and that the ALJ applied

proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is affirmed.  A separate order in accordance with the memorandum of decision will be entered.

      Done this 20th day of June, 2014.

                                         _____
                                            **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE